MARILYN C. DeCRESCENTE, Respondent, v CATHOLIC CHARITIES OF THE DIOCESE OF ALBANY et al., Defendants and Third-Party Plaintiffs-Appellants. COUNTY OF WASHINGTON et al., Third-Party Defendants-Respondents, et al., Third-Party Defendant. [932 NYS2d 575]—

McCarthy, J.

Defendant Catholic Charities of the Diocese of Albany and third-party defendant County of Washington (hereinafter the County) entered into an agreement whereby Catholic Charities would provide residential domestic violence services in the County. In October 1998, plaintiff contacted Catholic Charities seeking assistance as a result of domestic abuse by her husband. Defendant Patti Gray Whann[1] was the Catholic Charities employee on call that weekend. Whann called plaintiff and learned that plaintiff was afraid of her husband but did not have a safe

---

1. While the pleadings list this defendant as Patty Gray Wahn, she signed her affidavit Patti Gray Whann.

place to go. Catholic Charities' shelter serving Washington and Warren Counties was full, so Whann informed plaintiff of a vacancy in the Saratoga County shelter. When plaintiff did not wish to leave the County, Whann sought an alternate temporary placement in a motel by calling a caseworker at the Washington County Department of Social Services for approval. Whann obtained approval and found a vacancy at a motel operated by third-party defendant Fort Edward Victorian, Inc. (hereinafter the Victorian), where the County had previously housed individuals who were homeless or domestic violence victims.

Whann picked plaintiff up and drove her to the motel. During the drive, Whann offered to take plaintiff, who was bruised and appeared to be intoxicated, to the hospital, but plaintiff declined. While plaintiff was alone in the motel room that evening, third-party defendant Percival F. Hayes knocked on her door. Assuming that Whann had returned, plaintiff opened the door without checking to see who was outside. Hayes pushed his way into the room, then assaulted and raped plaintiff (*see People v Hayes*, 295 AD2d 751 [2002], *lv denied* 98 NY2d 730 [2002]). When Whann returned the next morning, plaintiff informed her about the assault.

Plaintiff commenced this action against Catholic Charities and Whann, who then commenced a third-party action against the Victorian, the County and Hayes. The Victorian moved for summary judgment dismissing the third-party complaint, as did the County. Defendants cross-moved for summary judgment dismissing plaintiff's complaint and the counterclaims of the Victorian and the County. Supreme Court granted the Victorian's and the County's motions dismissing the third-party complaint against them, but denied defendants' cross motion. Defendants appeal.

Supreme Court properly granted the Victorian's motion for summary judgment. Innkeepers and landlords have a duty to exercise reasonable care and take minimal security precautions to protect guests and tenants from reasonably foreseeable harm, including foreseeable criminal acts of third parties on the premises (*see Mason v U.E.S.S. Leasing Corp.*, 96 NY2d 875, 878 [2001]; *Six Anonymous Plaintiffs v Gehres*, 68 AD3d 1177, 1178 [2009], *lv denied* 14 NY3d 710 [2010]). The Victorian submitted an affidavit from its former owner explaining that, prior to Hayes' assault of plaintiff, the owner was never aware of any criminal activity at the motel or any crimes committed against guests by other guests or intruders. Each room at the motel had a locking door and a curtained window next to the door, which the occupant could look through to see who was

outside the door. As the Victorian established that it took minimal security measures, the burden shifted to defendants to raise a triable issue of fact regarding whether the crime here was reasonably foreseeable based upon prior occurrences of similar criminal activity on the property or nearby and whether the Victorian sufficiently responded to provide adequate safety for its guests (*see Six Anonymous Plaintiffs v Gehres*, 68 AD3d at 1178; *Johnson v City of New York*, 7 AD3d 577, 577-578 [2004], *lv denied* 4 NY3d 702 [2004]).

While defendants argue that the security measures were inadequate—including the lack of a peephole, deadbolt lock, safety chain or even a telephone in the room to call for help—the record lacks any proof of criminal activity on the motel premises or in the area. As the Victorian had no notice of prior criminal activity, the attack by Hayes was not foreseeable. Under the circumstances, the Victorian took adequate security measures for its guests by providing a locking door and a window to view outside the door. Thus, Supreme Court properly determined that the Victorian could not be held liable and granted its motion for summary judgment (*see Maheshwari v City of New York*, 2 NY3d 288, 295 [2004]; *compare Jenkins v Ehmer*, 272 AD2d 976, 977 [2000]).

Supreme Court also properly granted the County's motion for summary judgment. A municipality generally cannot be held liable for injuries to an individual due to the municipality's failure to protect that individual, because the duty to provide such protection is owed to the public at large; an exception exists where a special relationship has been formed between the municipality and the injured person (*see Laratro v City of New York*, 8 NY3d 79, 82 [2006]; *Mastroianni v County of Suffolk*, 91 NY2d 198, 203 [1997]; *Hanna v St. Lawrence County*, 34 AD3d 1146, 1147 [2006]). The elements of a special relationship include the municipality's assumption, by actions or promises, of an affirmative duty to protect the injured person, the municipality's knowledge that failing to act could lead to harm, direct contact between the municipality's agents and the injured person, and justifiable reliance by the person on the municipality's affirmative promise to act (*see Cuffy v City of New York*, 69 NY2d 255, 260 [1987]). Even assuming—without deciding—that the first two elements could be found here, defendants did not establish the last two elements. There was no direct contact between plaintiff and the County (*see Kircher v City of Jamestown*, 74 NY2d 251, 257 [1989]). Plaintiff contacted Catholic Charities, through its agent Whann, and Whann contacted the County's caseworker to get approval for a motel placement.

Catholic Charities had a contract to act as the County's independent contractor for purposes of providing domestic violence services. The County's only obligation under the contract was to approve and provide payment for placements, and it provided approval here before knowing which motel would be utilized. Based upon this lack of contact, it is unclear whether plaintiff was even aware that the County had any role in her placement in the motel (*see Cuffy v City of New York*, 69 NY2d at 262). The record therefore lacks any proof that she relied upon the County to keep her safe. As defendants did not establish that a special relationship existed, the County was entitled to summary judgment dismissing the third-party complaint.[2]

Supreme Court properly denied defendants' cross motion for summary judgment. Defendants submitted the affidavit of an expert in the field of domestic violence, who opined that defendants' actions were consistent with Catholic Charities' domestic violence protocol and procedure manual, as well as state regulations. Plaintiff submitted an affidavit from a different expert who attested to Whann's negligence in carrying out her duties, as well as flaws in Catholic Charities' procedures. Specifically, plaintiff's expert noted that Whann did not follow Catholic Charities' procedure for dealing with an intoxicated person who seeks services. Questions were also raised as to whether Whann complied with the procedure for selecting a motel placement, whether the Victorian should have been considered as a placement for domestic abuse victims due to the lack of security features, and whether Whann checked the motel to see what security measures were in place before leaving plaintiff there. For example, Whann averred that she told plaintiff to call her on the domestic violence hotline if any problems arose during the night, but she also told plaintiff not to leave the room and there was no phone in the room.[3]

Although plaintiff may have acted negligently in opening the door without attempting to confirm who had knocked, her actions go to comparative fault or at most raise a question as to

---

**2.** Although this Court has held that the direct contact and reliance elements of the special relationship may be satisfied by a statutory scheme protecting a limited class of people (*see Boland v State of New York*, 218 AD2d 235, 242-243 [1996] [finding those elements satisfied through the statutory scheme to protect abused and maltreated children]), the statute providing funding for emergency shelter services for domestic violence victims does not constitute a legislative determination that counties have an affirmative duty to prevent harm or injury to domestic abuse victims (*see* Social Services Law § 131-u).

**3.** Plaintiff did not possess a cell phone. The incident took place in 1998, when personal cell phone ownership was uncommon.

whether this was an intervening act that would affect defendants' liability (*see Mason v U.E.S.S. Leasing Corp.*, 96 NY2d at 878). Similarly, Hayes' conduct was not, as a matter of law, an intervening act that absolved defendants of liability. While no one may have expected a stranger to rape plaintiff, it was foreseeable that someone (i.e., her husband) would find plaintiff at the motel and attack her. Because an attack on plaintiff was foreseeable, defendants are not relieved of liability simply because plaintiff was attacked by someone other than the person that they expected might harm her (*see Dawn VV. v State of New York*, 47 AD3d 1048, 1051 [2008] [imposing liability where it was foreseeable that injury could occur, without requiring demonstration that exact manner of incident was foreseeable]). Defendants undertook a duty to keep plaintiff safe, with knowledge that someone might be looking to harm her. Supreme Court properly denied summary judgment dismissing the complaint because questions of fact exist regarding whether defendants fulfilled their duty and whether plaintiff's injury was caused by any such breach of duty (*see Pace v Unity House of R.C. Diocese of Albany*, 167 AD2d 739, 741 [1990]).

Rose, J.P., Malone Jr., Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, with one bill of costs.